IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

The Tradesmen Group, Inc.,  :
et al.,
                            :
      Plaintiffs,
                            :
   v.                              Case No. 2:09-cv-1032
                            :
Heidi Cecil, et al.,               JUDGE FROST
                            :
      Defendants.

OPINION AND ORDER

This matter is before the Court to consider the motion to dismiss for lack of personal jurisdiction filed by defendants Heidi and Richard Cecil pursuant to Fed.R.Civ.P. 12(b)(2). Plaintiffs The Tradesmen Group, Inc. and Melissa West have filed a response. No reply has been filed. For the following reasons, the motion to dismiss (#4) will be granted to the extent that this case will be transferred to the Middle District of Florida at Orlando.

I. Background

According to the complaint, this case involves a loan made by Ms. West in 2009, using funds belonging to Tradesmen, to Ms. Cecil. Plaintiffs allege that, despite a demand for payment, the $100,000 loan is still outstanding.

Ms. Cecil has moved to dismiss this case for lack of personal jurisdiction claiming that the requirements of Ohio's long-arm statute, R.C. §2307.382, have not been satisfied and that the exercise of such jurisdiction would violate due process. To the contrary, plaintiffs contend that Ms. Cecil obtained the loan agreement in Ohio and knowingly caused the loan at issue to be withdrawn from an Ohio bank. These circumstances, plaintiffs contend, satisfy the requirements of both Ohio's long-arm statute and due process.

The affidavit submitted by the defendants in support of their motion to dismiss sets forth the following. The Cecils currently reside in Florida and have lived there since December, 2005. Affidavit of Heidi Cecil, ¶3. They have not lived in Ohio since December, 2005 although they do occasionally visit family in Ohio. Id. at ¶4. Ms. Cecil discussed a potential investment opportunity with her sister, plaintiff Melissa West, while they were both in Kentucky in November, 2008. The investment opportunity involved Florida real estate. Id. at ¶7. In December, 2009 [sic-should be 2008], Ms. West visited Ms. Cecil in Florida and they discussed the opportunity again. Id. at ¶8. In approximately February, 2009, Ms. West went to Florida and deposited $500,000 into two joint accounts at SunTrust bank in Florida. Id. at ¶9. Both sisters were signatories on the accounts. Id. In March, 2009, Ms. Cecil withdrew $100,000 from these accounts and "utilized it toward the investment opportunity (the Florida real estate)." Id. at ¶10. Ms. Cecil visited Ms. West in Ohio in January or February, 2009. Id. at ¶12. To the extent the investment opportunity was discussed, Ms. Cecil told Ms. West 'not to worry' about it at that time due to Ms. West's personal situation. Id.

In response, plaintiffs have submitted the affidavit of Melissa West setting forth the following. Ms. West and Ms. Cecil did not discuss an 'investment' in Florida real estate. Affidavit of Melissa West at ¶2. Instead, they discussed a short-term loan to help the Cecils purchase the personal residence in which they currently live. Id at ¶¶2, 8. Ms. West and Ms. Cecil discussed a loan of $100,000 in Kentucky when they met in late 2008 but did not discuss it again until Ms. Cecil came to Ohio in February, 2009. Id. at ¶¶3, 4. During Ms. Cecil's Ohio visit, an agreement was reached that Ms. West would loan Ms. Cecil $100,000 as an interest-free loan to be paid back

2

by September, 2009, at the latest. Id. at ¶5. Ms. West then visited Ms. Cecil in Florida and brought the money with her to set up a joint checking account. Id. Ms. West was willing to loan the money because Ms. Cecil had previously made a loan to The Tradesmen Group and had come to Ohio to help Ms. West during a difficult time. Id. at ¶¶6, 7. Ms. West did not intend to invest in the Cecils' personal residence and did not see the house until after the joint account was set up. Id. at ¶9.

## II. Law

When a motion to dismiss for lack of personal jurisdiction is filed, the plaintiffs have the burden of establishing personal jurisdiction over a defendant. Neogen Corp v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002); Theunissen v. Matthews, 935 F.2d 1454 (6th Cir. 1991). When no hearing is conducted, the Court must consider the pleadings and affidavits in the light most favorable to the plaintiff. Intera Corp. v. Henderson, 428 F.3d 605, 614 (6th Cir. 2005). Further, the plaintiff need only make a prima facie showing of jurisdiction. Compuserve, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996).

In a diversity suit, personal jurisdiction over a defendant is determined by the law of the forum state. In-Flight Devices Corporation v. Van Dusen Air, Inc., 466 F.2d 220, 224 (6th Cir. 1972). A federal court may exercise personal jurisdiction only if the defendant is amenable to service under the forum state's long-arm statute and if the exercise of personal jurisdiction does not offend a defendant's right to due process. See Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002); Calphalon Corp. v. Rowlette, 228 F.3d 718 (6th Cir. 2000). In Ohio, the long-arm statute does not reach as far as due process permits so an analysis of both the statute and federal due process is required. Cole v. Mileti, 133 F.3d 433, 436 (6th Cir. 1998).

When jurisdiction is founded on the long-arm statute, the

3

cause of action must arise from at least one of the criteria set forth in the statute. These criteria include transacting business and various scenarios of causing tortious injury in Ohio. See O.R.C. §2307.382(A).

In order to satisfy due process requirements, a defendant must have certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2002) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Minimum contacts exist when "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp v. Woodson, 444 U.S. 286, 297 (1980). Further, it is necessary that the defendant "purposefully avail himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

The Sixth Circuit utilizes a three-part test for determining whether the particular circumstances in any case provide sufficient contact between a non-resident defendant and the forum state to support the exercise of personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374, 381 (6th Cir. 1968). Each criterion represents an independent

requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked.  <u>LAK, Inc. v. Deer Creek Enterprises</u>, 885 F.2d 1293 (6th Cir. 1989).

The first step of the three part analysis enunciated in <u>Southern Machine</u> requires an inquiry into whether a defendant has acted or caused consequences within the forum state.  The "purposeful availment" requirement "ensures that a defendant will not be haled into a jurisdiction as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the 'unilateral activity of another party or third person."  <u>Third National Bank in Nashville v. WEDGE Group, Inc.</u>, 882 F.2d 1087 (6th Cir. 1989)(quoting <u>Burger King</u>, 471 U.S. at 475).  In assessing a defendant's contacts with the forum state, "'[i]t is the 'quality of the contacts,' and not their number or status, that determines whether they amount to purposeful availment."  <u>Reynolds v. International Amateur Athletic Federation</u>, 23 F.3d 1110, 1119 (6th Cir. 1994).

The second part of the <u>Southern Machine</u> test requires an analysis of whether the plaintiff's cause of action arises out of or is related to the defendant's contacts with the forum state.  "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts."  <u>Bird</u>, 289 F.3d at 875 (quoting <u>Compuserve, Inc.</u>, 89 F.3d at 1267).

The third part of the Southern Machine test requires inquiry into whether a defendant's conduct establishes a "...substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."  <u>Southern Machine</u>, 401 F.2d at 381.  This analysis requires a determination whether the Court's exercise of jurisdiction would offend "traditional notions of fair play and substantial justice," <u>International Shoe</u>, 326 U.S. at 316, and whether the defendant's conduct

relating to the forum was such that he should reasonably anticipate being haled into court here. World-Wide Volkswagen, 444 U.S. at 297. In reaching the decision on fair play and substantial justice, the court must consider such factors as the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolutions of controversies. Theunissen, 935 F.2d at 1462 (citing Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102 (1987)). When the first two elements of the Southern Machine test have been met, an inference arises that the third is also present. Theunissen, 935 F.2d at 1461.

When examining the limits of personal jurisdiction, a distinction is made between "general" jurisdiction and "specific" jurisdiction." General personal jurisdiction exists where a defendant's contacts with the forum state are so "continuous and systematic" that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state. Specific personal jurisdiction exists where the claims in a case arise from or relate to a defendant's contacts with the forum state. Intera Corp., 428 F.3d at 616. It is with these standards in mind that the motion to dismiss for lack of personal jurisdiction will be decided.

### III. Analysis

#### A. Ohio's Long-Arm Statute

When jurisdiction is founded on the long-arm statute, the cause of action must arise from at least one of the nine criteria listed in the statute. In challenging the motion to dismiss, plaintiffs claim that the Cecils' conduct amounts to transacting business in Ohio under the first prong of the long-arm statute. Consequently, the Court will first consider the issue of whether

the loan from Ms. West to Ms. Cecil constitutes the transaction of business.

In Kentucky Oaks Mall v. Mitchell's Formal Wear, 53 Ohio St.3d 73, 559 N.E.2d 477 (1990), the Ohio Supreme Court discussed the concept of transacting business under Ohio's long-arm statute. According to the Court, the broad wording of the statute allows jurisdiction over non-residents who are transacting any business in Ohio. As stated by the Court, transact means "*to prosecute negotiations; to carry on business; to have dealings* .... The word embraces *in its meaning the carrying on or prosecution of business negotiations* but it is a *broader term than the word 'contract' and may involve business negotiations* which have been either wholly or partly brought to a conclusion ...." Id. at 480 (emphasis in original)(citation omitted). See also Kroger Co v. Malease Foods Corp., 437 F.3d 506 (6th Cir. 2006); Mustang Tractor & Equip. Co v. Sound Envtl. Serv., Inc., 104 Ohio Misc.2d 1, 727 N.E.2d 977 (Ohio Com. Pl. 1999). The act of contracting can qualify as transacting business under Ohio's long-arm statute. ALTA Analytics, Inc. v. Muuss, 75 F.Supp.2d 773, 779 (S.D. Ohio 1999).

Based on Ms. West's affidavit, which the Court must accept as true for purposes of ruling on the motion unless a hearing were to be held, she and Ms. Cecil reached an oral agreement regarding the loan while Ms. Cecil was visiting Ohio. Construing the affidavits in the light most favorable to plaintiffs, the terms of the agreement included that the loan was interest-free and was to be paid back no later than September, 2009. Oral agreements may be valid contracts under particular circumstances. Stainbrook v. Fox Broadcasting Co., 2006 WL 3757643 (N.D. Ohio Dec. 19, 2006) citing Kostelnik v. Helper, 96 Ohio St.3d 1, 3 (2002). Consequently, to the extent that Ms. West's and Ms. Cecil's reaching an oral agreement in Ohio may be deemed the act

7

of contracting, it may be that Ms. Cecil, on both her own behalf and on behalf of her husband, transacted business in Ohio. Further, to the extent that Ms. West is seeking repayment of the loan, it may be that her cause of action arises from that transaction of business. Under such circumstances, the first prong of the Ohio long-arm statute would be met. However, as discussed above, the satisfaction of Ohio's long-arm statute requirements is not dispositive of the personal jurisdiction issue.

### B. Due Process

The Court also must analyze whether the Due Process Clause presents a limitation on the exercise of personal jurisdiction over the Cecils. Brunner v. Hampson, 441 F.3d 457, 467 (6th Circuit 2006) citing Hall v. Tucker, 161 Ohio App.3d 245, 829 N.E.2d 1259 (2005). Here, it seems that exercising jurisdiction over the Cecils would not comport with due process. Occasional visits to Ohio to visit family cannot support a finding of general personal jurisdiction. See Hough v. Hough, 2007 WL 1170701 (W.D. Va. Apr. 17, 2007). Further, the fact that Ms. Cecil made a previous short-term loan to The Tradesmen Group does not establish, based on the absence of any specificity regarding it in the record here, the type of continuous and systematic contact with Ohio that would allow this Court to exercise general jurisdiction over the Cecils.

With respect to specific jurisdiction, the parties' affidavits support the conclusion that the Cecils would not reasonably anticipate being haled into court in Ohio with respect to this loan transaction such that the Court could find the exercise of specific personal jurisdiction appropriate. While there may be some discrepancies in the parties' affidavits regarding the site of negotiations, there is no dispute that the loan was discussed in Kentucky and that Ms. West personally

delivered the funds to Florida and set up at least one joint bank account in Florida on which she and Ms. Cecil were signatories. Further, while there may be disagreement over whether the Cecils' purchase of their home was considered an investment by Ms. West, there is no dispute that the funds were used to purchase Florida real property. For all of these reasons, the Court finds there is not a substantial enough connection between the Cecils' contacts with Ohio in regards to the subject matter of this case to make this Court's exercise of jurisdiction over them reasonable. Thus, the Court lacks personal jurisdiction over the Cecils.

### C. Sua Sponte Transfer under §1406(a)

While this Court's personal jurisdiction over the defendants is lacking here, dismissal is not required. A district court has the discretion to transfer a case to a proper forum rather than simply dismiss the case, even when personal jurisdiction does not exist. Krawec v. Allegany Co-Op Ins. Co., 2009 WL 1974413 (N.D. Ohio July 7, 2009). Further, "[a] court may transfer a case pursuant to 28 U.S.C. §1406(a) *sua sponte* even if the defendant moves only to dismiss." Holey Soles Holdings, Ltd v. Foam Creations, Inc., 2006 WL 1147963, at *9 (S.D.N.Y. May 1, 2006). Because the interest of justice is typically better served by transfer, concerns about whether to transfer or dismiss are generally resolved in favor of transfer.

The Court finds that the interests of justice would be served by the transfer of this case. Based on the affidavits submitted by the parties, the Cecils are residents of Lakeland, Florida, which is located in the Middle District of Florida. As a result, venue is proper in that district and the Cecils are subject to personal jurisdiction there. Consequently, this case will be transferred to the Middle District of Florida, Orlando Division.

9

## IV. Disposition

For the foregoing reasons, the motion to dismiss for lack of personal jurisdiction (#4) is GRANTED to the extent that this case is TRANSFERRED to the Middle District of Florida at Orlando.

                                              /s/ Gregory L. Frost
                                              GREGORY L. FROST
                                              UNITED STATES DISTRICT JUDGE